## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANICE TOWNSEND BARISKI,** | : | |
| **Individually and as the Executrix of THE** | : | |
| **ESTATE OF JAMES LEE BARISKI** | : | |
| **Plaintiff** | : | **Civil Action No. 1:10-cv-804** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **REASSURE AMERICA LIFE** | : | |
| **INSURANCE COMPANY**, | : | |
| **Defendant** | : | |

### MEMORANDUM

Plaintiff Janice Bariski brings this suit on behalf of herself and as the executrix of her husband's estate. She raises claims of breach of contract, bad faith, and violations of the Pennsylvania Consumer Protection Law arising from Defendant Reassure America Life Insurance Company's termination of a life insurance policy held by Plaintiff's husband, James Bariski. Defendant moves for summary judgment on Plaintiff's bad faith claim brought pursuant to 42 Pa. Conn. Stat. § 8371. Defendant's motion for partial summary judgment has been fully briefed and the Court held oral argument on the motion on June 28, 2011. For the reasons stated more fully herein, the Court will grant Defendant's motion for summary judgment on the bad faith claim.

## I.     BACKGROUND

Defendant issued life insurance policy number 3166593 to Mr. Bariski on June 8, 1990. (Doc. No. 32-2 ¶ 4.) Mr. Bariski elected to pay monthly premiums. (Id. ¶¶ 15-16.) The terms of the policy provide for a thirty-one day grace period for late payment of each premium. (Id. ¶ 7.) The policy remains in force during the pendency of the grace period. (Id. ¶ 7.) If payment is not

made within the grace period, Defendant issues a "notice of policy lapse." (<u>Id.</u> ¶ 23.)  The notice

of policy lapse provides for an extra-contractual grace period of thirty days, during which time

the policy lapses but Defendant will reinstate the policy without requiring the policy holder to

provide evidence of insurability, subject to certain limitations including that the policy holder

makes all past due premium payments.  (<u>Id.</u>; Doc. No. 36 ¶ 23.)

A $364.05 premium payment was due on Mr. Bariski's policy on November 8, 2005.[1]

(Doc. No. 32-2 ¶ 26; Doc. No. 36 ¶ 25.)  Defendant issued Mr. Bariski a lapse notice dated

December 9, 2005, indicating that the policy's grace period had run and that the policy lapsed.

(Doc. No. 32-2 ¶ 32.)  The lapse notice also advised Mr. Bariski to "DISREGARD THIS

NOTICE IF PREMIUMS WERE PAID WITHIN THE POLICY'S GRACE PERIOD."  (Doc.

No. 36 ¶ 32 (emphasis in original).)  The letter further advised Mr. Bariski of the lapse notice's

thirty day grace period.  (Doc. No. 32-2 ¶ 34.)  Taking into account the thirty-one day grace

period under the policy and the thirty day grace period provided in the notice of policy lapse, Mr.

Bariski's November 8, 2005 payment was due on January 9, 2006.  Defendant issued Mr. Bariski

a notice of policy termination dated January 9, 2006, informing Mr. Bariski that the policy was

terminated due to non-payment of the November 8, 2005 premium.  (<u>Id.</u> ¶ 43.)

On January 13, 2006, after receipt of the termination notice, Mr. Bariski called Defendant

several times regarding the termination of his policy.  (<u>Id.</u> ¶ 45.)  Defendant wrote a letter to Mr.

Bariski dated January 16, 2006, representing that Defendant received Mr. Bariski's November 8,

2005 premium payment on January 10, 2006, but informing Mr. Bariski that he would need to

---

[1] The parties dispute whether Mr. Bariski made his payment before the end of the grace periods.  However, whether Mr. Bariski made the payment in a timely manner is not material to the disposition of Defendant's motion for partial summary judgment.

file a reinstatement application because the policy lapsed on January 9, 2006.  (Id. ¶ 46.)  The letter further informed Mr. Bariski that Defendant had cashed the check and was holding the funds pending the approval of his reinstatement application and indicating that the funds would be refunded if Defendant did not receive the application by February 6, 2006.  (Doc. No. 32-5 Ex. O.)  Mr. Bariski sent Defendant a letter dated January 17, 2006, in which he wrote "to plead [his] case for immediate reinstatement of [his] insurance policy.  (Doc. No. 32-5 Ex. N.)  The letter states that Mr. Bariski was informed by Defendant that the policy was cancelled because Defendant claimed to have not received the check until after the grace period ended on January 9, 2006.  (Id.)  However, in the letter Mr. Bariski claimed that he wrote the November 8, 2005 premium check on November 14, 2005, and that the check was postmarked before January 8, 2006.  (Id.)  Mr. Bariski copied a "John Fenstermacher, Esq." on his letter.  (Id.)  The request for reinstatement without evidence of insurability was declined by letter dated February 21, 2006. (32-2 ¶ 51.)  Mr. Bariski told Plaintiff during the Spring of 2006 that Defendant had taken the position that the policy was terminated.  (Id. ¶ 53.)  Mr. Bariski died on December 20, 2007.[2] (Id. ¶ 56.)

## II.    STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[3]  A factual dispute is

---

[2] Mr. Bariski was diagnosed with Leiomyosarcoma, a form of cancer, in 2002.  (Doc. No. 32-5 Ex. Q.)

[3] Rule 56 was revised by amendment effective December 1, 2010.   "The standard for granting summary judgment remains unchanged," and "[t]he amendments will not affect

material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.  Id. at 251-52.  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  Berckeley Inv. Grp.. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted.  Celotex, 477 U.S. at 322.  With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant summary judgment where the non-movant's evidence is merely colorable, conclusory, or speculative.  Anderson, 477 U.S. at 249-50.  There must be

---

continuing development of the decisional law construing and applying these phrases."  Fed. R. Civ. P. 56 advisory committee's note to 2010 Amendments.

more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts.  Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial.  Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

## III.    DISCUSSION

Defendant moves for summary judgment on Plaintiff's bad faith claim brought pursuant to 24 Pa. Cons. Stat. § 8371.  Defendant asserts two independent grounds justifying summary judgment on these claims.  First, Defendant asserts that the two year statute of limitations has run on the claim.  In the alternative, Defendant asserts that the good faith claim does not apply where the alleged bad faith arises in the context of a policy being terminated rather than in the context of an insurer denying payment of the policy proceeds.  Because Defendant prevails on the statute of limitations defense, the Court will not address the applicability of the good faith statute.

A statute of limitations question is a question of law that is properly decided at summary judgment.  Adamski v. Allstate Ins. Co., 738 A.2d 1033, 1036 (Pa. Super. Ct. 1999).  A cause of action alleging bad faith under 24 Pa. Cons. Stat. § 8371 is subject to a two year statute of limitations.  Ash v. Cont'l Ins. Co., 932 A.2d 877, 885 (Pa. 2007).  In a survival action, the statute of limitations for an estate begins to run on the date the right to institute a cause of action arose for the decedent.  Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc., 468 A.2d 468, 471 (Pa. 1983); see also Holt v. Lenko, 791 A.2d 1212, 1215 (Pa. Super. Ct. 2002).  A cause of action generally arises on the date the injury is sustained.  Wilson v. El-Daief, 964 A.2d 354, 361

(Pa. 2009).  A named beneficiary,[4] however, does not have a standing to sue to challenge the termination of a life insurance contract until the insured dies.  Kucera v. Metro. Life Ins. Co., 719 F.2d 678, 681 (3d Cir. 1983) (reasoning that the beneficiary would not have a contractual right to the proceeds of the contract until after the death of the insured).

In the present action, Defendant sent Mr. Bariski a letter dated January 9, 2006, terminating the life insurance policy.  (Doc. No. 32-2 ¶ 41.)  In addition, Mr. Bariski died on December 20, 2007, meaning Plaintiff's individual claim would have accrued on that date.  (Id. ¶ 56.)  Applying the statute of limitations, assuming the period was not tolled, the statute would have run on the estate's claim on January 9, 2008, and would have run on the individual claim on December 20, 2009.  Plaintiff did not initiate suit until January 11, 2010.  (Id. ¶ 65.)  Therefore, Defendant argues the claims are time barred.  Plaintiff, however, argues that the discovery rule and doctrine of fraudulent concealment toll the running of the statute of limitations in this matter. The Court will address these issues seriatim.

A.      **Discovery Rule**

The discovery rule will serve to toll the applicable limitations period until a plaintiff knew, or in the exercise of reasonable diligence should have known, that he has been injured and by what cause.  Wilson, 964 A.2d at 359 (citing Fine v. Checcio, 870 A.2d 850 (Pa. 2005)).  This inquiry concerns a plaintiff's reasonable diligence and is therefore generally a question of fact for a jury.  Id.  However, a court is free to resolve the discovery rule question at summary

---

[4] Plaintiff is not the named beneficiary of her late husband's life insurance policy. However, because there is a dispute regarding whether the policy was properly assigned to Plaintiff, at summary judgment the Court assumes the claims have been assigned to her, and she stands in the place of the named beneficiary.

judgment where reasonable minds would not differ on the plaintiff's diligence.  Id.  A plaintiff

bears the ultimate burden of proof of establishing the applicability of the discovery rule.  Id.

Notably, Pennsylvania employs a narrow construction of the discovery rule in which the statute

of limitations will commence as soon as a plaintiff has actual or constructive knowledge of "at

least some form of significant harm and of a factual cause linked to another's conduct."  Id. at

363-64 (noting that a plaintiff need not know the full extent of the injury or that there is a cause

of action); see also Mest v. Cabot Corp., 449 F.3d 502, 510-11 (3d Cir. 2006) ("[A] plaintiff

need not know the 'exact nature' of his injury, as long as it objectively appears that the plaintiff

'is reasonably charged with the knowledge that he has an injury caused by another.'" (citation

omitted)).

In the present matter, the undisputed evidence shows that Mr. Bariski wrote Defendant a

letter dated January 17, 2006, in which Mr. Bariski states:

> I am writing this letter to plead my case for immediate reinstatement
> of my insurance policy.  I have had several telephone conversations
> with your department, notably Trish Barnett, regarding your decision
> to lapse my policy and feel that I did nothing wrong to cause this
> action.
>
> . . .
>
> After the Holidays, on Friday, January 13, 2006, I was paying my
> bills and realized that I did not have one from your company.  I called
> and was informed that since I had not paid my November bill, my
> policy was beyond the 61 day grace period that ended on January 9,
> 2006.  Immediately checked my account and found that my payment
> had only cleared the bank the day before, January 12th.  I was told that
> the check was posted too late to count as having been received before
> the due date.
>
> In an effort to reinstate my policy, and show that I consider my policy
> to still be in force, I sent a check from my personal account that
> afternoon to cover the December and January payments.  I have no

> idea what happened to delay delivery of my November payment to
> your lockbox in Baltimore, but I know that it had to have been
> postmarked before January 8, 2006. The envelope only had a 37 cent
> stamp and it would have been returned to me for the extra 2 cents that
> became effective on the 8th.
>
> This clearly shows that the November payment was in the postal
> system before the end of the grace period. I sent it with the
> expectation that it would be received and credited in a timely
> manner.[5]

(Doc. No. 34, Ex. N.) Therefore, as of at least January 17, 2006, Mr. Bariski stated that he was

aware that the life insurance policy had been cancelled, that Defendant cancelled the policy,

when he mailed the check in question, and that he believed the policy had been improperly

cancelled. In addition, Mr. Bariski informed Plaintiff of these facts at some point in the Spring

of 2006. (Id. ¶ 53.) Accordingly, by the Spring of 2006 Mr. Bariski and Plaintiff were under an

obligation to investigate whether these facts gave rise to a cause of action. Under Pennsylvania's

formulation of the discovery rule nothing further is required to commence the running of the

limitations period, and the discovery rule cannot serve to salvage Plaintiff's cause of action for

bad faith.

### B.      Fraudulent Concealment

The doctrine of fraudulent concealment serves to toll the statute of limitation where a

defendant "causes the plaintiff to relax vigilance or deviate from the right of inquiry" concerning

the cause of an injury. Mest v. Cabot Corp., 449 F.3d 502, 516 (3d Cir. 2006) (quoting

---

[5] Mr. Bariski apparently copied a "John Fenstermacher, Esq." on this letter. (Doc. No. 34, Ex. N.) It is unclear what, if any, legal advice Mr. Fenstermacher provided to Mr. Bariski on this issue and the Court will not, at this time, attach weight to this fact. The Court does, however, observe that Mr. Bariski's decision to copy Mr. Fenstermacher may support a finding that even Mr. Bariski was of the opinion that outside legal advice was warranted on this issue.

Ciccarelli v. Carey Canadian Mines, Ltd., 757 F.2d 548, 556 (3d Cir. 1985)).  For example, a physician's statement which "lull[s] a patient into a false sense of security" can in certain circumstances constitute fraudulent concealment.  Bohus v. Beloff, 950 F.2d 919, 926 (3d Cir. 1991) (citations omitted) (finding fraudulent concealment where a physician told his patient that her post-surgery pain was a normal part of the healing process).  Plaintiff bears the burden of proving the applicability of the doctrine by "clear, precise, and convincing evidence."  Fine, 870 A.2d at 860 (citing Molineux v. Reed, 532 A.2d 792, 794 (Pa. 1987)).  The doctrine of fraudulent concealment only applies where the defendant has deceived the plaintiff, intentionally or unintentionally, such that the plaintiff is unaware of the injury and its cause.  Fine, 870 A.2d at 860-61; see also Mest, 449 F.3d at 517 (requiring plaintiff to demonstrate an act of concealment on the part of the defendant that "would divert or mislead the plaintiff from discovering the injury").

Plaintiff alleges, and the Court assumes as true, that Defendant made misrepresentations regarding (1) the mailbox rule; (2) the date of the actual receipt of Mr. Bariski's premium check; and (3) its investigation into Mr. Bariski's payment of his premium.  However, the uncontested evidence also shows that, as has been explained, supra, Mr. Bariski was aware of his injury – the cancellation of the insurance policy – and the cause of the injury – Defendant's decision – in January 2006.  Plaintiff was aware of these same facts in Spring of 2006.  Given Plaintiff's and Mr. Bariski's actual knowledge of the injury and its cause, the Court must conclude that the doctrine of fraudulent concealment will not serve to toll the statute of limitations.  Fine, 870 A.2d at 861; see also Delaney v. Archdiocese, 924 A.2d 659, 663-64 (Pa. Super. Ct. 2007) (concluding the doctrine of fraudulent concealment did not apply where the defendant's conduct

concealed additional theories of liability, but did not conceal the fact of the injury itself).

Whatever factual misrepresentations Defendant made, those misrepresentation did not prevent

Plaintiff from learning these critical facts.  Likewise, Plaintiff's position that she is entitled to

tolling because Defendant misled Mr. Bariski regarding the legal significance of those facts must

fail.  The Court is unable to find support for such a theory, nor has Plaintiff identified any

applicable precedent.  Because a person exercising reasonable diligence would have sought legal

assistance to determine whether any rights were violated at the time the policy was cancelled, the

Court must grant summary judgment on Count II of Plaintiff's complaint.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JANICE TOWNSEND BARISKI,** | : | |
| **Individually and as the Executrix of THE** | : | |
| **ESTATE OF JAMES LEE BARISKI** | : | |
| **Plaintiff** | : | **Civil Action No. 1:10-cv-804** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **REASSURE AMERICA LIFE** | : | |
| **INSURANCE COMPANY**, | : | |
| **Defendant** | : | |

## <u>ORDER</u>

**NOW**, on this 6th day of July 2011, **IT IS HEREBY ORDERED THAT** Defendant's

motion for summary judgment on Count II of Plaintiff's Complaint (Doc. No. 32) is

**GRANTED**.  The clerk of court shall defer entry of judgment until all remaining claims have

been adjudicated.

S/ Yvette Kane
Chief Judge Yvette Kane
United States District Court
Middle District of Pennsylvania

11